**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220067-U

Order filed April 19, 2023

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-22-0067 Circuit No. 18-CF-797 |
| | ) | |
| MICHAEL D. SPIVEY, | ) ) | Honorable Brian F. Telander, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE ALBRECHT delivered the judgment of the court.
Justice McDade concurred in the judgment.
Justice Brennan dissented.

**ORDER**

¶ 1     *Held*:   The circuit court erred in dismissing defendant's postconviction petition at the first stage.

¶ 2     Defendant, Michael D. Spivey, appeals from the first-stage dismissal of his postconviction petition. Defendant argues that he presented the gist of an ineffective assistance of counsel claim. We reverse and remand with directions.

¶ 3                                            I. BACKGROUND

¶ 4       The State charged defendant with two counts of aggravated domestic battery (720 ILCS 5/12-3.3(a-5) (West 2018)). The counts alleged that defendant had strangled the victim, causing her bodily harm (count I) and made physical contact of an insulting or provoking nature (count II). At the preliminary hearing on April 12, 2018, the court appointed counsel to represent defendant and entered a no contact order prohibiting defendant from contacting the victim. Beginning June 6, 2018, defendant called the victim's cell phone numerous times in violation of the no contact order.

¶ 5       After a bench trial, defendant was convicted of both counts of aggravated domestic battery. Based on his prior convictions, defendant was subject to a Class X felony sentencing range of 6 to 30 years' imprisonment (730 ILCS 5/5-4.5-25(a); 5-4.5-95(b) (West 2018)). The court sentenced defendant to 15 years' imprisonment.

¶ 6       Defendant appealed and the Second District granted appointed counsel's motion to withdraw and affirmed the judgment. *People v. Spivey*, No. 2-19-0657 (2021) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 7       Defendant filed a postconviction petition as a self-represented litigant, alleging he was unfit to stand trial and trial counsel was ineffective for failing to request a hearing to determine his fitness. The petition alleges appellate counsel was ineffective for failing to raise this issue on direct appeal. The petition also alleges defendant was prescribed and taking psychotropic medications for his major depressive and anxiety disorders at the time of his trial, and that he informed his counsel prior to trial that he was taking these psychotropic medications. The petition further alleges defendant informed his trial counsel that he "did not understand the process," was having thoughts about suicide, and that he believed he would "be allowed to leave after the witness testified." The petition also alleges defendant's irrational behavior was demonstrated by his violation of the

court's no contact order with the victim "300 to 1000 times." In support of these allegations, defendant submitted an affidavit and his medical records. The medical records confirmed defendant was taking fluoxetine, quetiapine, and hydroxyzine.

¶ 8 The circuit court dismissed the petition at the first stage, holding that the record clearly contradicted any suggestion defendant was unfit for trial. In its written decision, the court noted that "defendant appeared before this court more than fifteen times and at no time did the defendant's appearance or conduct demonstrate any indication of a *bona fide* doubt of fitness." The court also reviewed the submitted medical records, which indicated defendant was "OK," "stable on meds," "not depressed," "no suicidal thoughts" or "no feelings of self-harm." Defendant appeals.

¶ 9                                      II. ANALYSIS

¶ 10 Defendant argues that his petition asserted the gist of an ineffective assistance of counsel claim and thus, should not have been dismissed at the first stage.

¶ 11 The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2020)) provides a process for a criminal defendant to assert that his conviction resulted from a substantial denial of his rights under the United States Constitution, the Illinois Constitution, or both. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). At the first stage, defendant need only state the "gist" of a constitutional claim. *Id.* This standard presents a "low threshold," requiring only that defendant plead sufficient facts to assert an arguably constitutional claim. *People v. Jones*, 211 Ill. 2d 140, 144 (2004). The circuit court may summarily dismiss the petition at the first stage of proceedings if it is frivolous or patently without merit, such that it "has no arguable basis either in law or in fact." *Hodges*, 234 Ill. 2d at 12. A claim completely contradicted by the record is an example of an indisputably meritless legal theory. *People v. Brown*, 236 Ill. 2d 175, 185 (2010). In considering the petition,

3

the circuit court may examine the court file of the criminal proceeding, any transcripts of the proceeding, and any action by the appellate court. *Id.* at 184; 725 ILCS 5/122-2.1(c) (West 2020). A postconviction proceeding is not an appeal from the judgment of conviction but is a collateral attack on the trial court proceedings. *People v. Petrenko*, 237 Ill. 2d 490, 499 (2010). Issues that could have been raised on direct appeal, but were not, are forfeited. *People v. English*, 2013 IL 112890, ¶ 22. However, the doctrines of *res judicata* and waiver are relaxed for claims of ineffective assistance of appellate counsel. *People v. Williams*, 209 Ill. 2d 227, 233 (2004).

¶ 12       A *pro se* petition is not expected to set forth a complete and detailed factual recitation, but it must set forth some facts which can be corroborated. *People v. Delton*, 227 Ill. 2d 247, 254-55 (2008). "[F]ailure to either attach the necessary ' "affidavits, records, or other evidence" or explain their absence is "fatal" to a post-conviction petition [citation] and by itself justifies the petition's summary dismissal.' " *Id.* at 255 (quoting *People v. Collins*, 202 Ill. 2d 59, 66 (2002)). "All well-pleaded facts must be taken as true unless 'positively rebutted' by the trial record." *Brown*, 236 Ill. 2d at 189 (quoting *People v. Coleman*, 183 Ill. 2d 366, 385 (1998)). A circuit court must liberally construe allegations within postconviction petitions and "all reasonable inferences should be taken in favor of finding" a petition's survival at an early stage. *People v. Allen*, 2015 IL 113135, ¶ 25; *People v. Knight*, 405 Ill. App. 3d 461, 471 (2010).

¶ 13       To ultimately prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was objectively unreasonable and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). In determining whether counsel's performance was unreasonable, there is a "strong presumption that the challenged action or inaction of counsel was the product of sound trial strategy and not of incompetence." *Coleman*,

4

183 Ill. 2d at 397. But, at this stage of the postconviction proceedings, "a petition alleging ineffective assistance may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Hodges*, 234 Ill. 2d at 17. The summary dismissal of a postconviction petition is reviewed *de novo*. *Brown*, 236 Ill. 2d at 184.

¶ 14        Here, defendant's petition alleges he was unfit to stand trial and his trial counsel was ineffective for failing to request a fitness hearing and appellate counsel was ineffective for failing to raise this issue on direct appeal. Due process prohibits convicting or sentencing a defendant who is unfit. U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I § 2; *Drope v. Missouri*, 420 U.S. 162, 180 (1975); *People v. Sandham*, 174 Ill. 2d 379, 382 (1996). In Illinois, a defendant is presumed fit to stand trial, unless because of "his mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense." 725 ILCS 5/104-10 (West 2020). A defendant is entitled to a fitness hearing where a *bona fide* doubt of his fitness is raised. *People v. Easley*, 192 Ill. 2d 307, 318 (2000). Failure to request a fitness hearing may constitute ineffective assistance of trial counsel, and failure to raise that issue on direct appeal may constitute ineffective assistance of appellate counsel. See *Brown*, 236 Ill. 2d at 191; *People v. Simms*, 192 Ill. 2d 348, 361 (2000) ("[T]he doctrine of waiver should not bar consideration of an issue where the alleged waiver stems from incompetency of appellate counsel in failing to raise the issue on appeal.").

¶ 15        In *Brown*, petitioner, Raymond Brown, read a statement to the court at the sentencing hearing, stating he had been depressed and previously tried to kill himself and was attempting to commit suicide by cop during the incident. *Brown*, 236 Ill. 2d at 180. Brown further "stated he was taking 'psych medication' and was told he should have received a psychiatric evaluation prior

5

to his trial, but his trial attorney failed to bring the matter to the court's attention." *Id.* The circuit court inquired whether there was any reason for counsel to have a *bona fide* doubt as to Brown's fitness. *Id.* Brown's counsel claimed he was not aware Brown was taking psychotropic medication, and stated that Brown "spoke very coherently," "seemed fine," and counsel "had no problem communicating with him." *Id.* The court also noted it had not observed anything in Brown's conduct or appearance indicating a *bona fide* doubt of his fitness during any of his appearances in court. *Id.*

¶ 16　　　In support of his postconviction petition, Brown submitted medical records documenting his bipolar diagnosis, and attached affidavits from his mother and aunt, attesting that trial counsel was informed Brown was taking medication for his bipolar disorder. *Id.* at 186. The circuit court dismissed the petition at the first stage of the postconviction proceedings believing the issue was barred by *res judicata* because it was raised on direct appeal. *Id.* at 181-82. The appellate court then determined the issue was not barred because it was never considered on direct appeal, but still upheld the dismissal because the petition and supporting documentation did not " 'establish the trial court would have found a *bona fide* doubt of [Brown's] fitness and ordered a fitness hearing.' " *Id.* at 182. Our supreme court ultimately held that despite the statements by the court and counsel, "[a]t most, the record create[d] a factual dispute on whether there was a *bona fide* doubt of [Brown's] fitness." *Id.* at 191. The court also held the petition was not based upon a meritless legal theory. *Id.* at 190. The court therefore reversed, and the petition advanced to the second stage of the proceedings. *Id.* at 194.

¶ 17　　　Here, defendant's petition alleges his trial counsel was ineffective for failing to request a fitness hearing, and his appellate counsel was ineffective for failing to raise the issue on direct appeal. In support of his claim, defendant alleges in the petition and supporting affidavit and

6

medical records that he informed his counsel he did not understand the proceedings, was taking psychotropic medication, and believed he would be allowed to leave following a witnesses' testimony. Defendant's medical records show his mental health fluctuated pretrial. While several psychiatry notes indicate that defendant was "stable on meds" during his pretrial incarceration, a point the circuit court identified in denying defendant's petition, other notes suggest interspersed episodes of instability with reported feelings of stress, "dark thoughts," and "a lot of anxiety." Indeed, defendant's last psychiatric evaluation before trial resulted in an increase of his psychotropic prescription of quetiapine after he relayed that his current prescription was "not strong enough." As such, we do not find these records sufficiently dispositive to dismiss defendant's postconviction petition at the first stage. The petition and affidavit further allege defendant's erratic behavior is evinced by his hundreds of phone calls to the victim in violation of the court's no contact order. When construed liberally, a court may reasonably infer that the extent of defendant's violations provides indicia of irrational behavior. See *id.* at 186. The court's observations of defendant's appearance and conduct only point to a factual dispute in need of resolution at the second or third stage of the postconviction proceedings. See *id.* at 190 (where both the circuit court and trial counsel's observations that Brown showed no *bona fide* doubt of fitness did not positively rebut Brown's claim that he was unfit to stand trial and his counsel should have requested a fitness hearing). The allegations in the petition, which we must take as true, arguably raise a *bona fide* doubt of defendant's fitness to stand trial. Further, trial counsel's failure to request a fitness hearing arguably fell below an objective standard of reasonableness and prejudiced defendant given the statements defendant allegedly made to his counsel that he did not understand the proceedings, was taking psychotropic medication, and believed he would be allowed to leave following a witnesses' testimony. As a result, appellate

7

counsel's failure to raise the issue on direct appeal also arguably fell below an objective standard of reasonableness. The petition therefore sets forth the gist of a constitutional claim and clears the low bar at this stage of the postconviction process.

¶ 18                                    III. CONCLUSION

¶ 19        The judgment of the circuit court of Du Page County is reversed and remanded for second-stage postconviction proceedings.

¶ 20        Reversed and remanded with directions.

¶ 21        JUSTICE BRENNAN, dissenting:

¶ 22        I respectfully dissent from the majority's holding that defendant set forth the gist of a constitutional claim where his trial counsel failed to request a fitness hearing.

¶ 23        As the majority notes, a postconviction claim completely contradicted by the record is an example of an indisputably meritless legal theory that is the proper basis for first-stage summary dismissal. *Brown*, 236 Ill. 2d at 185. Here, defendant alleges in support of his ineffective assistance of counsel claim that he informed trial counsel that he was taking psychotropic medications, was having suicidal thoughts, did not understand the process, and thought he could leave after the witness testified. The very medical records that defendant attached in support of his postconviction petition rebut defendant's allegations. As summarized by the trial court in dismissing defendant's postconviction petition, the medical records encompass the relevant time periods and reflect that defendant was "stable on meds," not depressed, and had no suicidal thoughts or feelings of self-harm.

¶ 24        Equally unavailing is defendant's allegation that trial counsel knew that defendant was taking psychotropic medications at the time of trial and did not request a fitness hearing. The mere ingestion of psychotropic medication does not automatically raise a *bona fide* doubt of

fitness to stand trial. *People v. Mitchell*, 189 Ill. 2d 312, 330-31 (2000). "The issue is not mental illness, but whether defendant could understand the proceedings against him and cooperate with counsel in his defense." *People v. Easley*, 192 Ill. 2d 307, 323 (2000). As the trial court noted in summarily dismissing defendant's postconviction petition, "[t]he defendant appeared before this court more than fifteen times and at no time did the defendant's appearance or conduct demonstrate any indication of a bona fide doubt of fitness." This finding was consistent with defendant's medical records indicating that he was "stable on meds."

¶ 25    Finally, I fail to understand how defendant's hundreds of phone calls to the victim in violation of the court's no-contact order evidences erratic behavior suggesting unfitness. To the contrary, as argued by the State at defendant's sentencing hearing, defendant's "year of work of badgering [the victim] over and over and over again, getting her to conceal her whereabouts, pressuring her to no-show, pressuring her to cooperate on his defense, ultimately got her up on the stand to recant what her previous statements were." It is unfortunately all too common for defendants to harass domestic violence victims to coerce them not to cooperate with the prosecution. Defendant's hundreds of phone calls to the victim here reflect a keen understanding of this dynamic and, to the extent they were almost successful, evidence criminal thinking rather than unfitness.

¶ 26    In sum, defendant's petition for postconviction relief based upon ineffective assistance of counsel for failure to request a fitness hearing does not set forth the gist of a constitutional claim. Accordingly, the trial court properly dismissed defendant's postconviction petition at the first stage.

¶ 27    For these reasons, I respectfully dissent.